HENDRY, Adm'r, vs. CLINE et al.

1. CONSTITUTIONAL LAW: *Judicial proceedings of confederate courts entitled to full faith, etc.*

The provision of the constitution of the United States, requiring full faith and credit to be given to the public acts, records and judicial proceedings of every other state, *held* to apply to a judicial proceeding had in the state of Texas during the war.

2. PAYMENT: *In confederate money; when good.*

When confederate money was paid to, and accepted by an administrator in satisfaction of a debt due to the intestate, and by the administrator used at par in the payment of the debts of the estate, it was a good payment and extinguished the debt.

APPEAL from *Sebastian* Circuit Court.

Hon. J. H. HUCKLEBERRY, Circuit Judge.

*Wm. Walker*, for appellant.

*Duvall v. Cravens*, contra.

HARRISON, J.  Alexander H. Cline, on the 15th day of October, 1860, executed to Wm. D. Shaw a mortgage on a lot of ground in the city of Fort Smith, to secure the payment of a writing obligatory, of that date, for $1,300, payable in two years thereafter; and the same was duly acknowledged and recorded.

Shaw died intestate, in the county of Lamar, in the state of Texas, in 1863, which, so far as anything appears to the contrary, was his domicile; and the administration on his estate was granted by the county court of said county to Thomas Lanigan, on the 29th day of January, 1864.

On the 22d day of June, 1864, Cline paid said Lanigan, at Paris, in said state, $1,513.04, amount of principal and interest in confederate money, which was then greatly depreciated and below par, in satisfaction and discharge of the debt, and took from him a receipt for the same, and, also, an order on W. H.

Mayen, at Fort Smith, in whose possession it was, for the writing obligatory.

Cline, on the 1st day of February, 1866, conveyed the lot to Nicholas B. Pearce, and he, on the 16th day of August, 1867, conveyed the same to Jeannie C. Cline, the wife of said Alexander H.; and the said Jeannie C. and the said Alexander H., on the 9th day of October, 1868, executed to William P. Merryman, a mortgage on the lot, to secure the payment of a loan of $2,000 to the latter.

On the 18th day of December, 1867, the appellant, John R. A. Hendry, obtained from the probate court of Sebastian county, letters of administration on Shaw's estate, in this state, who, denying the validity of the payment to Lanigan, and the consequent satisfaction of the mortgage to Shaw, brought this suit for a foreclosure of the same, to which the said Alexander H. Cline, Jeannie C. Cline, Nicholas B. Pearce, William P. Merryman and James H. Hamilton, who was in the occupancy of the premises, were made defendants.

He charged in his complaint that Cline, when he paid Lanigan the confederate money, to induce him to accept the same, fraudulently represented the debt as unsecured, and concealed from him the existence of the mortgage, and that Lanigan, under the impression and belief, caused by such misrepresentation and concealment, that the debt was desperate, consented to receive payment in such money. The writing obligatory, or mortgage, was never in the possession, or subject to the control of the plaintiff.

Merryman alone answered the complaint. He denied the alleged misrepresentation by Cline, and that Lanigan received the confederate money in ignorance of the existence of the mortgage; but, on the contrary, averred that he willingly received the same, and applied the whole of it in payments of the debts of the estate, dollar for dollar.

There was, upon the hearing, no evidence whatever of any misrepresentation or fraudulent concealment by Cline, though Lanigan, who was a witness for the plaintiff, testified that he did not inform him that there was a mortgage, and that he did not know there was one until after the war; but the proof showed that he used the confederate money in the payment of the debts of the estate, at par, and that no loss resulted from the receiving of it.

The complaint was dismissed for the want of equity. There was no denial in the complaint of the validity of the administration in Texas, or of Lanigan's authority to collect the debt; but it is insisted here, by the appellant's counsel, that Texas, during the civil war, and when the alleged administration was had, had no government which could be recognized as legitimate, and there was no court that could confer on him the right to administer the estate, and we are referred, in support of this position, to the case of *Penn et al. v. Tollison*, 26 Ark., 545. If the decision in that case, overruling the former decision of this court, in *Hawkins v. Filkins*, in which the question was, as to the validity of judicial proceedings during the war, in this state, is to be taken as a correct exposition of the law in respect to such proceedings, in regard to which there is no occasion for us to express our opinion, it cannot be so extended as to have an application in a case like the present, when the proceedings of a court of a sister state, had during that time, are the subject of consideration; for the constitution of the United States requires full faith and credit to be given in each state to the public acts, records and judicial proceedings of every other state; and it has been settled by the supreme court of the United States, that the acts of the several insurrectionary states, and of their different departments of government, during the war, when they did not militate against the national authority, were valid and binding.

Hendry, Adm'r, vs. Cline et al.

*Texas v. White*, 7 Wall., 700; *City of Richmond v. Smith*, 15 id., 429; *Horn v. Lockhart*, 17 id., 570. In the case last cited, that court said: "We admit that the acts of the several states, in their individual capacities, and of their different departments of government, executive, judicial and legislative, during the war, so far as they did not impair, or tend to impair, the supremacy of the national authority, or the just rights of citizens under the consitution, are, in general, to be treated as valid and binding. The existence of a state of insurrection and war did not loosen the bonds of society, or do away with civil government, or the regular administration of the laws. Order was to be preserved, public regulations maintained, crime prosecuted, property protected, contracts enforced, marriages celebrated, estates settled, and the transfer and descents of property regulated precisely as in time of peace. No one, that we are aware of, seriously questions the validity of judicial or legislative acts in the insurrectionary states, touching these and kindred subjects, when they were not hostile in their purpose or mode of enforcement to the authority of the national government, and did not impair the rights of citizens under the constitution."

As the confederate money, though greatly depreciated, was used by Lanigan in the payment of the debts of the estate, no loss or injury resulted from its receipt, and neither the plaintiff nor the creditors, or distributees, have any cause on that account to complain, and the payment of it satisfied and extinguished the debt.

The decree is affirmed.